UNITED MERCHANTS' REALTY AND IMPROVEMENT COMPANY, Appellant and Respondent, v. MAX J. ROTH, Respondent and Appellant.

RIGHT OF NEW TENANT TO TREAT TENANT IN POSSESSION AS HOLDING OVER. In case a tenant holds over after the expiration of his term, the landlord may elect to consider him a tenant for a new term under an implied agreement arising by operation of law. A lessee, whose lease begins at the termination of a prior lease, is entitled to the possession as successor to the landlord, and while there may be no privity of contract between the new tenant and the old one, there is privity of estate, and the new tenant has the right to treat the old one as a tenant for a new term under section 193 of the Real Property Law (L. 1896, ch. 547.)

VANN and GRAY, JJ., dissenting, in part.

*United Merchants' Realty & Improvement Co.* v. *Roth*, 122 App. Div. 628, affirmed.

(Submitted November 9, 1908; decided December 15, 1908.)

CROSS-APPEALS, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 6, 1907, reversing in part and affirming in part an interlocutory judgment of Special Term overruling a demurrer to the complaint.

This action was brought to recover rent for a part of certain premises in the city of New York for the months of May to September, inclusive, in the year 1906. The complaint contains ten counts, two for each month, one alleging a right to recover because the defendant held over after the expiration of his term and the other, an express contract. The following is a specimen of the first series: "1. That the plaintiff is, and at all times hereinafter mentioned was, a domestic corporation. 2. Upon information and belief, that on or about the 6th day of April, 1904, Henry Gerken being owner of the building known as 1498 Third Avenue, Borough of Manhattan, City of New York, leased to the defendant, Max J. Roth, and the defendant hired from him, the two stories, one on the first floor and one on the second floor, together with front basement of the said building for the term of two years from May 1st, 1904, at the yearly rent of $2,800, payable in equal monthly installments in advance on the 1st day of each month. 3. Upon information and belief, that the defendant entered into the demised premises and occupied the same according to the terms of said lease. 4. That thereafter for valuable consideration the said Henry Gerken assigned and set over to the plaintiff herein, *from and after May 1st, 1906*, the said lease and all his rights in and to the same, and all his rights to the control, occupancy and possession of the said premises for a period of five years beginning May 1st, 1906, and that the plaintiff on May 1st, 1906, became entitled to the possession and control of the said demised premises. 5. That on and after the 1st day of May, 1906, the said defendant continued and remained in the possession and occupancy of the said premises without the consent of the plaintiff, and the plaintiff thereupon duly elected to hold the defendant as tenant of said premises for

another year commencing the 1st day of May, 1906, upon the same terms and at the same rent, payable as was in and by the said lease provided for, of all of which the defendant had due and timely notice."

Each count in the second series repeats paragraphs one to four inclusive of the counts in the first series and then continues as follows, except that the name of the month for which rent is claimed is changed to accord with the fact: " That before the first day of May, 1906, defendant requested plaintiff herein to permit and allow him to continue to occupy and use said premises on and after May 1st, 1906, the time at which his lease of said premises expired, but plaintiff refused to so consent, and informed this defendant that plaintiff would not permit or allow him to continue to use and occupy said premises on and after May 1st, 1906, and further informed him that if he, defendant, should remain over his term, which expired May 1st, 1906, or should continue to use, or occupy said premises on and after May 1st, 1906, that plaintiff herein would elect to hold him as a tenant of said premises for one year from May 1st, 1906, and would consider, interpret and regard his remaining over after May 1st, 1906, and the continued use and occupancy of said premises by defendant on and after May 1st, 1906, as a consent, agreement and contract on the part of said defendant to occupy and lease said premises from plaintiff for one year from May 1st, 1906, upon the same terms and at the same rent per annum as was in and by said lease between defendant and said Gerken provided for. That defendant, well knowing the plaintiff's aforesaid terms and conditions in connection with his continuing to occupy and use said premises on and after May 1st, 1906, did remain over and hold over on and after May 1st, 1906, and did continue to use and occupy said premises, and thereby did agree and contract to lease said premises for one year from May 1st, 1906, upon the same terms and at the same rent per annum as was in and by said lease between defendant and said Gerken provided for."

The defendant demurred to each count, separately, upon

the ground that it did not state facts sufficient to constitute a cause of action. The court at Special Term overruled all the demurrers, but the Appellate Division reversed as to counts one to five, inclusive, and affirmed as to the others, one of the justices dissenting as to the last five counts. Permission having been given, each party appealed to this court from so much of the judgment as was against himself, and the following questions were certified to us for decision: "1. Does the complaint, in the causes of action therein numbered and designated as first to fifth, inclusive, state facts sufficient to constitute a cause, or causes, of action? 2. Does the complaint, in the causes of action therein numbered and designated as sixth to tenth, inclusive, state facts sufficient to constitute a cause, or causes, of action?"

*Solomon M. Stroock* and *H. L. Moses* for plaintiff, respondent and appellant. The right to elect that a tenant overstaying his term be regarded as a "holdover" is a right growing out of the right of possession of real property, not out of the ownership thereof. (L. 1896, ch. 547, § 200; *Frost* v. *Akron Iron Co.*, 1 App. Div. 449; Code Civ. Pro. §§ 1496, 1497, 1531, 3343; *Becar* v. *Flues*, 64 N. Y. 518; *Trull* v. *Granger*, 8 N. Y. 115; *Gardner* v. *Keteltas*, 3 Hill, 330; *Russo* v. *Yuzolino*, 19 Misc. Rep. 28; *McDonald* v. *Hanlon*, 79 Cal. 442; *Harris* v. *Halverson*, 63 Pac. Rep. 551; *B. Co.* v. *Crosby*, 60 Pac. Rep. 652.) In England it is the landlord — the owner of the reversion — who alone is entitled to possession at the expiration of the tenant's lease. In this state the new tenant is entitled to possession at that time, and he cannot call upon the landlord to put him in possession; he must obtain that possession himself from the overstaying tenant. (*Mirsky* v. *Horowitz*, 46 Misc. Rep. 257; *T.-H. E. Co.* v. *D. L. I. Co.*, 4 Misc. Rep. 207; *Gardner* v. *Keteltas*, 3 Hill, 330.) The plaintiff acquired a right *in præsenti* to the possession of the premises, and that right was complete and vested upon the date of the assignment to it by the landlord. (*Trull* v. *Granger*, 8 N. Y. 115; *Becar* v. *Flues*, 64 N. Y.

518; *Young* v. *Dake,* 5 N. Y. 463; *Whitney* v. *Allaire,* 1 N. Y. 305.) The assignment to the plaintiff of the lease. of the present tenant from and after the date of its expiration, and of all the landlord's rights in and to the same, and of all the landlord's rights to the control, occupancy and possession of the premises, for a period commencing from the date of such expiration, constituted the plaintiff an assignee with all of the rights conferred upon assignees by section 193 of the Real Property Law. (*McDonald* v. *Hanlon,* 79 Cal. 442; *Devlin* v. *New York,* 63 N. Y. 8; *Merrick* v. *Brainard,* 38 Barb. 574; *McDougall* v *Walling,* 48 Barb. 364; *Kinyon* v. *Kinyon,* 72 Hun, 452; *Stover* v. *Eycleshimer,* 3 Keyes, 620; *Ham* v. *Van Order,* 84 N. Y. 257; *Chester* v. *Jumel,* 125 N. Y. 237; *Miller* v. *Emans,* 19 N. Y. 384; *Comegys* v. *Vasse,* 26 U. S. 193; *Griffin* v. *Sheppard,* 124 N. Y. 70.)

*George V. Mullan* for defendant, appellant and respondent. The right to hold a lessee overstaying his term as tenant for a further period is a right growing out of the relation of landlord and tenant, and exists only where the relation exists. (*Conway* v. *Starkweather,* 1 Den. 113; *Schuyler* v. *Smith,* 51 N. Y. 309; *Adams* v. *City of Cohoes,* 127 N. Y. 175; *Haynes* v. *Aldrich,* 133 N. Y. 287; *Herter* v. *Mullen,* 159 N. Y. 28; 1 McAdam on Landl. & Ten. [3d ed.] 82; Taylor on Landl. & Ten. § 524; Jones on Landl. & Ten. § 201 *et seq.;* Chaplin on Landl. & Ten. § 323.) The defendant was not the plaintiff's tenant. (1 McAdam on Landl. & Ten. [3d ed.] 52, 53; *Imbert* v. *Hallock,* 23 How. Pr. 456; *Goelet* v. *Roe,* 14 Misc. Rep. 28; *Davidson* v. *Hammerstein,* 28 Misc. Rep. 529; 2 Taylor on Landl. & Ten. [9th ed.] 346; *Blackford* v. *Cole,* 5 C. B. [N. S.] 514.) Plaintiff, being a lessee before entry, held no estate, but a mere *interesse termini,* and defendant was, therefore, not even a trespasser in law as to plaintiff. (*Smith* v. *Day,* 2 M. & W. 684; 1 Washb. on Real.Prop. [5th ed.] 472; Tiedeman on Real Prop. [3d ed.] § 131; 1 Taylor on Landl. & Ten. [9th ed.] § 15.) The alleged assignment by the common lessor

to plaintiff of the lease to defendant after said lease expired, is of no help to plaintiff on any theory. (*Demarest* v. *Willard*, 8 Cow. 206; *Huerstel* v. *Lorillard*, 6 Robt. 260; Fowler on Real Prop. [2d ed.] 615; *Van Rensselaer* v. *Hays*, 19 N. Y. 68; *Van Rensselaer* v. *Ball*, 19 N. Y. 104; Taylor on Landl. & Ten. [9th ed.] §§ 295, 439; Chaplin on Landl. & Ten. 285, 286; 2 McAdam on Landl. & Ten. [3d ed.] 789, 792; Jones on Landl. & Ten. §§ 421–430; 24 Cyc. 927; Woodfall on Landl. & Ten. [London 1902 ed.] 276; Wood on Landl. & Ten. [2d ed.] 722; Sloane on Landl. & Ten. 86, 88; *Huerstel* v. *Lorillard*, 7 Robt. 251; *Kelly* v. *Smith*, 41 N. Y. S. R. 620.)

CULLEN, Ch. J. I concur in the opinion of my brother VANN as to the last five counts in the complaint, but I think that the first five are also good. The question presented by the demurrer to these counts is whether a new lessee, whose lease begins at the termination of a prior lease, can, at his option, treat the prior lessee, in case he holds over, as his tenant under the terms of the original lease. That the landlord could do so, if he had not made the second lease, is unquestionable. (*Schuyler* v. *Smith*, 51 N. Y. 309.) While it is true that in such case the agreement is only an implied one, it is one that the tenant cannot repudiate. As said by Judge EARL in the case cited: " The law sometimes steps in and makes agreements for parties which they did not mutually intend. * * * And, hence, a tenant who has obtained possession of real estate cannot dispute the title of his landlord; and, having obtained possession from his landlord, he should not be permitted to hold over, deny his tenancy and convert himself, at his option, into a wrong-doer." While there may be no privity of contract between the new tenant and the old one, there is privity of estate. (Taylor on Ejectment, p. 165.) If the new tenant sued in ejectment to recover possession of the premises, the old tenant could not put in issue his landlord's title, but could only defend by showing that such title had not devolved on the new tenant. Privity of

contract is not necessary to confer the right of election on the new tenant for, as shown in the case cited, the right of the landlord to treat the holdover as a tenant for a new term does not spring from the contract of the parties but is the penalty imposed by law upon the trespassing tenant. It is an incident of the landlord's estate and that estate and possession under such estate he has conferred upon the new tenant. It is undisputed that if, during the term of the first lease, the landlord had conveyed his reversion the conveyance would have carried to his grantee the right of election. But it must be borne in mind that the landlord's right to an election could not accrue or come into existence during the term of the first demise, but only after its expiration. When, there-fore, this right first accrued the new tenant was entitled to the estate in possession as successor of the landlord. It seems to me, therefore, that the case clearly falls within section 193 of the Real Property Law (L. 1896, ch. 547) " The grantee of leased real property, or of a reversion thereof, or of any rent, the devisee or assignee of the lessor of such a lease, or the heir or personal representative of either of them, has the same remedies, by entry, action or otherwise, for the non-performance of any agreement contained in the assigned lease for the recovery of rent, for the doing of any waste, or for other cause of forfeiture as his grantor or lessor had, or would have had, if the reversion had remained in him." There is every reason why the doctrine for which I contend should prevail with us. The situation of a lessee is very different in this state and most of the other states in the Union from that in England. There the landlord is bound to give possession to his tenant. (*Coe* v. *Clay*, 5 Bing. 440.) " He who lets agrees to give possession, and not merely to give a chance of a law suit." Here the law seems the reverse. In *Gardner* v. *Keteltas* (3 Hill, 330) it was held : " It is not the duty of the landlord, when the demised premises are wrong-fully held by a third person, to take the necessary steps to put his lessee into possession. The latter being clothed with the itle by virtue of the lease, it belongs to him to pursue such legal

remedies as the law has provided for gaining it, whether few or many." The new lessee, and not the landlord, being thus subjected to all the inconveniences and damage occasioned by the holding over, he ought to have the same right that the landlord would possess were it not for the new lease. I think the section which I have quoted not only justifies us in holding, but requires us to hold that he has that right.

The orders of the Appellate Division and Special Term should be modified so as to overrule the demurrer to all the causes of action set forth in the complaint, with costs in all courts, and with usual leave to defendant to withdraw the demurrer and answer within twenty days on payment of such costs, and both questions certified should be answered in the affirmative.

VANN, J. In order to avoid confusion it will be convenient to consider each series of counts by itself, treating them as if there were two counts, one on either theory, and care should be taken to apply the language used in the discussion only to the facts alleged in the count to which it relates.

1. If the relation of landlord and tenant existed between the plaintiff and defendant under the lease which expired on the 1st of May, 1906, the former had the right to treat the latter as a tenant for another year upon the same terms, for the law implies an agreement to that effect under those circumstances. (*Schuyler* v. *Smith*, 51 N. Y. 309; *Haynes* v. *Aldrich*, 133 N. Y. 287.) That relation, however, did not exist between the parties during the continuance of that lease, because no part of the term was assigned to the plaintiff by the owner of the reversion. The assignment of the lease, which was "from and after May 1, 1906," took effect only after the term had expired and the defendant's estate for years had ended. At no time had he been a tenant of the plaintiff and as he had not held under him, he could not hold over as to him, because he never had possession from him nor attorned to him. The assignment of a lease that has expired conveys no term because there is no term left to convey.

37

Form cannot create substance and the most formal transfer of a term that has passed is like the sale of gunpowder that has exploded.   There is nothing left for the assignment to act upon and it passes no estate, for it does not touch the reversion. (*Demarest* v. *Willard*, 8 Cow. 206.)

Clearly the naked status of landlord cannot be assigned. It matters not that some rights may pass by the assignment of a lease with no term left, such as the right to recover unpaid rent, because, unless some part of the term passed, the defendant did not hold under the plaintiff but under the owner of the reversion on the first of May, when the term ended.   While the plaintiff, under his lease from the owner the term of which commenced May 1st, 1906, had the right to possession after that date, no part of that term coincided with any part of the term of the defendant which ended on that day.   No part of the estate held by the defendant under the first lease ever met any part of the estate of the plaintiff under either lease, for he took no estate under the former as it expired before the assignment to him took effect, and his estate under the latter did not begin until the other term had ended.   The parties had successive but not concurrent estates. Neither held under the other, and both did not hold under the owner of the reversion at the same time, the one as tenant and the other as subtenant.

On the 1st of May, 1906, there was no privity of contract or estate between the plaintiff and defendant.   While the former then became entitled to possession and the latter remained in possession without right, such possession according to the facts alleged in the first count, was that of a trespasser, not of a tenant of the plaintiff.   The right to elect that a tenant holding over after the expiration of his term shall be liable for another year upon the terms of the lease, was not created by statute but existed at common law.   The right on the one hand and the obligation on the other belonged only to those recognized by the common law as landlords and tenants.   There must be a withholding of possession by a tenant from his landlord and the defendant was

not the tenant of the plaintiff when the question under discussion arose. While a lessee may become the landlord of his subtenant, it can only be when the lease of the former overlaps that of the latter. The owner of the reversion, whether it is a fee or a term, is the one to whom the law gives the right of election and the plaintiff was an owner in neither sense.

A tenant holding over from his landlord without leave is liable for rent at the election of the latter upon the theory of a renewal of the lease by implication. Owing to the previous relations between the parties the law implies a renewal of the obligations dependent on those relations, which measure every detail of the new contract. The amount of the rent reserved is thus ascertained. In the case before us the rent cannot be thus fixed, because neither party sustained any relation to the other with reference to the first lease because the plaintiff was not a party to it. Resort cannot be had to a lease between other parties for this purpose, as the law will not imply that because A agreed to pay B rent at a certain rate, he also agreed to pay C at the same rate when C sustained no relation to A while the lease was in force. To so hold would extend the rule with neither principle nor authority to support it.

Section 193 of the Real Property Law does not apply, because the plaintiff never had a right of reversion and that section, like its English prototype, gives a grantee or assignee the rights that his grantor or lessor " would have had if the reversion had remained in him." (32 Henry VIII, c. 34; 1 R. L. 363; 1 R. S. 747; Fowler's Law of Real Property, 91.) The object of such legislation, as the title of the original act stated, was to enable " grantees of reversions to take advantage of the conditions to be performed by the lessees."

I think that each of counts one to five, inclusive, fails to state a cause of action.

2. In the second series of counts the pleader proceeds upon a different theory. He alleges that before the lease to the defendant expired and after the lease to the plaintiff had been given, the defendant requested the plaintiff to allow him to

continue to use and occupy the premises after his right had ended and that of the plaintiff had begun; that the plaintiff refused, but told him that if he should remain over his term the "plaintiff herein would elect to hold him as a tenant of said premises" for a year and "would consider, interpret and regard his remaining over  *  *  *  as a consent, agreement and contract  *  *  *  to occupy and lease said premises" for another year on the terms of the lease between himself and the owner of the reversion; that the defendant, knowing the terms of the plaintiff, remained over after the expiration of his lease and thereby agreed to take the premises upon those terms.

These facts constitute a cause of action, because the law implies from the fact of occupancy under the circumstances alleged that the defendant assented to the terms stated. This has been held in several cases which we regard as controlling in principle. (*Despard* v. *Walbridge*, 15 N. Y. 374; *Coit* v. *Planer*, 51 N. Y. 647; *Preston* v. *Hawley*, 139 N. Y. 296.) Notwithstanding the refusal of the plaintiff to accede to the defendant's request that he might continue in possession, the facts alleged, if proved upon a trial, would present a question for the jury whether the continued occupation of the defendant was not a virtual assent to the terms prescribed by the plaintiff. A jury could find that the plaintiff made a proposition, and that the defendant accepted it according to its terms and by the method therein provided. He had requested leave to occupy and was informed that if he did occupy, the plaintiff, who was entitled to possession on the day named, would elect to hold him as a tenant and would regard that act as a consent to lease for another year. It is a reasonable inference from these facts and hence a jury could find, that the plaintiff made a proposition and that the defendant accepted it by doing an act which both parties intended should amount to an acceptance, because it was the method of accepting provided in the proposition. Aside from the acceptance of benefits, which implies an assent to obligations, it is well settled that the concurrence of the minds of the parties upon a proposition by one

manifested by an overt act of the other makes a contract. (*Mactier* v. *Frith*, 6 Wend. 103; *Trevor* v. *Wood*, 36 N. Y. 307; *Dent* v. *North American Steamship Company*, 49 N. Y. 390.)

In the case last cited Judge RAPALLO said : " Although the resolution of the board of directors of the defendant, ratifying the purchase of the steamship by Mr. Webb on the terms and conditions set forth in the letter, may not have been communicated to the plaintiffs, yet, after the receipt of the letter by Mr. Webb the defendant took possession of the vessel without any dissent from the terms stated in the letter. This constituted an acceptance of and acquiescence in the terms expressed in the letter and the plaintiffs had the right to rely upon it as an assent to those terms." Retaining possession in this case had the same effect as taking possession in that, because each was an overt act which could not lawfully have been done unless it constituted an acceptance of the terms proposed. At least a jury might so find.

I think that each count in the second series sets forth a good cause of action ; that the order appealed from should be affirmed ; that the first question certified should be answered in the negative and the second in the affirmative. As both parties appeal costs should be allowed to neither.

HAIGHT, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur with CULLEN, Ch. J.; GRAY, J. concurs with VANN, J.

Ordered accordingly.