### SIMON v. HERMANN et al.

(Municipal Court of City of New York, Borough of Manhattan, Second District. June 2, 1911.)

1. LANDLORD AND TENANT (§ 127*)—POSSESSION OF PREMISES.

The continued physical possession of leased premises by a transferee of a tenant constitutes possession by the tenant himself.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 446, 447; Dec. Dig. § 127.*]

2. LANDLORD AND TENANT (§ 128*)—PUTTING LESSEE IN POSSESSION.

One demising property is not obliged to put the lessee in possession.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 448, 449; Dec. Dig. § 128.*]

3. LANDLORD AND TENANT (§ 128*)—POSSESSION BY LESSEE.

A grantee taking property subject to a lease is not bound to put the lessee in possession.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 448, 449; Dec. Dig. § 128.*]

4. LANDLORD AND TENANT (§ 129*)—SUMMARY PROCEEDINGS—RIGHT TO MAINTAIN.

Under the statute relating to summary proceedings, a lessee may maintain such proceedings against a former tenant and his assignee when the term has expired.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 450–457; Dec. Dig. § 129.*]

Summary proceedings by William Simon against Israel Hermann and another. Possession of premises awarded.

Henry M. Goldfogle and Alfred D. Lind, for petitioner.
Henry Kuntz, for the undertenant.

LYNN, J. The petitioner seeks through means of summary proceedings to recover possession of certain premises which it is claimed one Hermann, as tenant, and various persons who entered under Her-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mann are holding over after the expiration of Hermann's term, which ended May 1, 1911. Baruch Schultz, one of the undertenants, defends, claiming that his occupancy is by virtue of a lease made to him beginning May 1, 1911.

It appears that Isidore Cuba, the then owner, leased the premises to Hermann for a term of five years, beginning May 1, 1906, and expiring May 1, 1911. In June, 1910, Cuba leased the premises to William Simon, the petitioner, for the term of five years, beginning May 1, 1911. This lease was recorded in the office of the recorder of New York county July 9, 1910. Subsequently Cuba conveyed away the property, thus entirely divesting himself of ownership. Hermann, the first tenant, who conducted a store on the premises, transferred his interest to Baruch Schultz, giving to him a bill of sale of the good will of the business, and on or about April 25, 1911, Hermann delivered possession to Schultz, who entered the premises and ever since has continued in possession of them.

[1] Hermann never formally surrendered the property, except as stated, to transfer his possession to Schultz. The continued physical possession of the premises by Schultz constituted the continued legal possession by the tenant himself. Mando v. Kitchell, 132 App. Div. 390, 116 N. Y. Supp. 691.

It is now contended that the original lessor to Hermann or the present owner of the fee is the only one who, under the statute, may maintain these proceedings, and that there is no authority for the petitioner to bring this proceeding. In Gardner v. Keteltas, 3 Hill, 330, 38 Am. Dec. 637, it appeared that a tenant to whom a lease had been granted by the owner of the fee was unable to obtain possession when the term of his lease commenced because of the holding over of a former tenant, and the court, per Nelson, Chief Judge, commenting on the statute providing for summary proceedings to remove tenants, said:

"This is a remedial statute, and should be liberally expounded in furtherance of its objects, and it appears to me that without any very strained construction the lessee may be regarded as falling within the term 'assigns,' and as such may institute proceedings under the act."

The learned counsel for the answering undertenant, however, cites Cullinan v. Goldstein, 61 Misc. Rep. 82, 113 N. Y. Supp. 21 and Eells v. Morse, 67 Misc. Rep. 125, 121 N. Y. Supp. 617, in support of his contention. In the Cullinan Case the lessor, who evidently was the owner of the fee, leased premises to Goldstein for a term to end March 9, 1908, and then leased them to Cullinan for a term to begin in March, 1908, and end in May, 1910. Goldstein having continued in possession after the expiration of his lease, Cullinan, whose term was to begin at the time fixed for that expiration, brought the proceeding, and the Appellate Term (MacLean, J., delivering the opinion) held that summary proceedings would not lie, saying:

"It has been held that a landlord may maintain dispossess proceedings after the expiration of a term, although he leased the same premises to another, to begin upon the expiration of the term of the person in possession, but it has not been held apparently that the incoming lessee may maintain such a proceeding."

The language thus used justifies the assumption that the attention of the court had not been directed to the case of Gardner v. Keteltas, above cited, nor to the case of Russo v. Yuzolino, 19 Misc. Rep. 28, 42 N. Y. Supp. 482.

In the Eells Case the summary proceedings were instituted by the lessor. The overholding tenant sought to defeat the proceeding on the ground that the lessor had no right to institute the proceeding. The Appellate Term affirmed the final order against the tenant, holding that the proceedings would lie in the name of the lessor.

The court in its opinion stated that proceedings would not lie in the name of the lessee, but nevertheless that was not the direct question involved. Yielding the greatest respect to the views of the learned justice delivering the opinion in that case, the declaration that the proceeding could not be instituted by the lessee may well be regarded as obiter. But, whether this be so or not, the facts with relation to the situation of the parties in that case differ from those in the case now under consideration; and, again, the expressions found in the opinions of the Appellate Division and of the Court of Appeals in the cases to which I shall presently allude constrain me to hold that the objections raised by Schultz are not tenable.

I have already pointed out that in the Eells Case the proceedings were not instituted by the lessee but by the lessor. The Appellate Division was particularly careful to make it clear that it refrained from deciding that a lessee did not, under the Code provision relating to summary proceedings, come within the term "assigns" so as to entitle him to maintain the proceedings. In the concluding portion of the opinion, the court said:

"*It is not necessary to decide upon this appeal whether the new tenant as the person lawfully entitled to the possession of the property or as an assignee of the landlord, purchaser, or other person entitled to apply would also be entitled to maintain the proceeding.* It seems to me sufficient to say in affirming this order that under the express provisions of the section the landlord in this proceeding, being both the landlord and also the lessor of the demised premises, was entitled to maintain the proceeding." Eells v. Morse, 142 App. Div. 592, 127 N. Y. Supp. 438.

In the same case Mr. Justice Laughlin, who dissented from the proposition that the landlord could institute the proceeding, declared it as his decided opinion that the new tenant was the only one who had the right to institute the proceeding and maintain it. Vide dissenting opinion of Mr. Justice Laughlin.

The decision in the Eells Case was in February, 1911, long subsequent to the decision in the Cullinan Case, upon which counsel for the undertenant mainly relies. Weight must be given to that fact, in view not only of the language employed in the prevailing opinion, pointing out that the court refrained from deciding whether a lessee could maintain the proceeding, but also in view of the opinion of the learned judge who dissented from the main proposition, and who declared, in his judgment, the new lessee was the one who was authorized to institute the proceeding.

Imbert v. Hallock, 23 How. Prac. 456, referred to in the Cullinan Case, was an action in trespass. The question whether the lessor

had the right to bring summary proceedings was discussed by the court, and it was held that the lessor had such right. In passing upon the point the court at Special Term said that the lessee could not institute the proceeding. But in the more recent case of Russo v. Yuzolino, 19 Misc. Rep. 28, 42 N. Y. Supp. 482, which was a summary proceeding, the Appellate Term of the Supreme Court held that a summary proceeding could be properly brought by a lessee, and in passing upon the question, Daly, P. J., who delivered the opinion, said:

"While the mere assignee of the rent cannot maintain subsequent summary proceedings, as he has no right to possession, the lease in this case gives such right. Summary proceedings may be brought by any person entitled to the possession who succeeds to the lessor's rights."

And the learned justice added:

"No question of title arises in the case, because the title of the landlord of both parties was not disputed. But, even if there were a question of title, the justice would not lose jurisdiction, as the provision of the statute for the removal or dismissal of civil action where title to real property comes in question does not apply to summary proceedings"—[citing Dorschel v. Burkly, 18 Misc. Rep. 240, 41 N. Y. Supp. 389].

It is argued on behalf of the overholding undertenant that the sole remedy of the petitioner must be found in an ejectment suit. A brief example may suffice to illustrate that in the light of the judicial expressions in favor of a lessee maintaining the proceeding and of the rules that govern the construction of statutes such argument is not to be supported.

[2] The owner who demises property is not obliged under the law as it obtains in this state to put the lessee in possession (U. M. Realty & Imp. Co. v. Roth, 193 N. Y. 576, 86 N. E. 544), but were he disposed to put the lessee in possession, yet if, as in this case, he deeded away the property before the beginning of the demised term, he neither could, nor is it expected he would, give himself concern to place the lessee in possession. Having conveyed his property, his interest ceased and his right of possession was gone. Boyd v. Sametz, 17 Misc. Rep. 728, 40 N. Y. Supp. 1070.

[3] A grantee who takes property subject to a lease is not obliged to put the lessee in possession, and, were the contention of the learned counsel for Schultz correct, he could for all practical purposes thwart the lessee (though the latter had taken the precaution to record his lease) in his endeavor to secure possession against an overholding occupant.

Is it to be said that the law is so deficient in its application that the new owner may retain the old occupant, whose term expired, give him a new lease, and drive the intermediate lessee, who in law has the right of possession, to a suit in ejectment as the exclusive remedy? Such a course of litigation would, as a general rule, especially in a case of the demise of a brief term, such as a few years, be almost invariably fruitless and ineffectual. Under the law governing ejectment actions, a second trial, with consequent appeals, is allowable, even after defeat on the first trial and unsuccessful appeals.

The necessarily long drawn out litigation in ejectment means a practical denial of justice to such a lessee, and were no other remedy than

an ejectment suit open to a lessee, whose rights were vested, and who exercised that vigilance which the law contemplates through force of the recording statutes, the law would indeed be in a deplorable state. No one, especially a business man in our city, would be safe or secure in his rights under a lease for a brief term of years, taken in good faith, nor free from the danger of disruption and destruction of his business and ruination of his trade.

It requires no stretch of imagination to conceive of cases where the failure to get possession during the term, or during a good portion of it, would cause irreparable damage, in many cases beyond all measurement under legal rules, and entail consequences disastrous to the party who, having actually prepared for removal to the place into which he had legal right to enter, and to the possession of which he is legally entitled, finds himself without business place or habitation, as the case may happen to be.

The rules governing the construction of statutes carry out my idea that the statute under which this proceeding is brought allows the petitioner the remedy sought. "Where a literal interpretation leads to unreasonable or unjust consequences, and an intention to enact a reasonable statute may be fairly inferred, the court will adopt a sensible construction, such as will effectuate the legislative intention and avoid objectionable consequences." 26 Am. & Eng. Encyc. of Law, 647, title "Statutes" and cases cited.

In Varick v. Briggs, 6 Paige, 323, the court, per Walworth, C., said:

"In construing statutes, however, it is not reasonable to presume that the Legislature intended to violate a settled principle of natural justice nor to destroy a vested title to property. Courts, therefore, in construing statutes, will always endeavor to give such an interpretation to the language used as to make it consistent with reason and justice."

In Smith v. People, 47 N. Y. 336, the court, per Allen, J., said:

"In the construction of statutes, effect must be given to the intent of the Legislature, whenever it can be discerned, *though such construction seem contrary to the letter of the statute.* That intent must be primarily sought in the language of the statute, and if the words employed have a well understood meaning, are of themselves precise and unambiguous, in most cases no more may be necessary than to expound them in their natural and ordinary sense. The words in such case ordinarily best declare the intention of the Legislature. Sussex v. Peerage, 11 C. & F., 86; Newell v. People, 7 N. Y. 97; McCluskey v. Cromwell, 11 N. Y. 593. These rules are elementary, but it is equally well settled that words absolute of themselves and language the most broad and comprehensive may be qualified by reference to other parts of the same statute in which they are used and to the circumstances and facts existing at the time and to which they relate or are applied. *A literal interpretation of words in most common use and having a well-defined meaning as ordinarily used would not infrequently defeat rather than accomplish the intent of the party using them.*"

Thus, to effectuate the intention of the Legislature to give speedy remedy to one who came fairly within the statute designed to afford a summary method to recover possession of property, the court held, where a mortgagee purchased lands under a suit in foreclosure, to which a tenant holding under a lease subsequent to the mortgage was not made a party defendant, he occupied the conventional relation of

landlord with the tenant, and might maintain summary proceedings (Commonwealth Mort. Co. v. De Waltoff, 135 App. Div. 33, 119 N. Y. Supp. 781), and in several cases the word "assigns" has received a broad and liberal interpretation rather than a narrow, strict, or technical one.

[4] There are two cases in the Court of Appeals which, in my opinion, furnish ample warrant for holding that the petitioner in this case brings himself within the Code provision under which this proceeding is brought. In U. M. Realty & Imp. Co. v. Roth, 193 N. Y. 570, 86 N. E. 544, the court, per Cullen, Ch. J., said:

"While there may be no privity of contract between the new tenant and the old one, there is privity of estate. * * * It is undisputed that, if during the term of the first lease the landlord had conveyed his reversion, the conveyance would have carried to his grantee the right of election (to hold the former tenant as a tenant for another year). * * * When, therefore, this right first accrued, the new tenant was entitled to the estate in possession as successor of the landlord. It seems to me, therefore, that the case clearly falls within section 193 of the real property law (Laws 1896, c. 547). 'The grantee of leased real property, or of a reversion thereof, or of any rent, the devisee or assignee of the lessor of such a lease, or the heir or personal representative of either of them, has the same remedies, by entry, action or otherwise, for the nonperformance of any agreement contained in the assigned lease for the recovery of rent, for the doing of any waste, or for other cause of forfeiture as his grantor or lessor had, or would have had, if the reversion had remained in him.' There is every reason why the doctrine for which I contend should prevail with us. The situation of a lessee is very different in this state and most of the other states in the Union from that in England. There the landlord is bound to give possession to his tenant (Coe v. Clay, 5 Bing. 440). 'He who lets agrees to give possession, and not merely to give a chance of a lawsuit.' Here the law seems the reverse. *In Gardner v. Keteltas*, 3 Hill, 330, 38 Am. Dec. 637, *it was held: 'It is not the duty of the landlord, when the demised premises are wrongfully held by a third person, to take the necessary steps to put his lessee into possession.* The latter being clothed with the title by virtue of the lease, it belongs to him to pursue such legal remedies as the law has provided for gaining it, whether few or many.' *The new lessee, and not the landlord, being thus subjected to all the inconveniences and damage occasioned by the holding over, he ought to have the same right that the landlord would possess were it not for the new lease.* I think the section which I have quoted not only justified us in holding, but requires us to hold, that he has that right."

In Reich v. Cochran (decided April 7, 1911, advance sheets of official edition of Law Reports, page 450 of 201 N. Y., 94 N. E. 1080), the Court of Appeals adjudicated the effect of the Code provision relating to summary proceedings. The court, per Werner, J., said:

"Prior to 1820 the only remedy which a landlord had was by action in ejectment. That was, of course, an expensive and dilatory proceeding which in many instances amounted to a denial of justice. The statute of 1820 was designed to remedy this evil by providing the landlord with a simple, common, expeditious, and inexpensive means of regaining possession of his premises in cases where the tenant refused upon demand to pay rent or where he wrongfully held over without permission after the expiration of his term. * * * The effect of the Code revision was to bring summary proceedings within the range of our remedial procedure, and not to render them more technical than they were before. They are still statutory proceedings, in the prosecution of which the requirements of the statute must be met, and they are usually instituted in courts of circumscribed jurisdiction, where the right to act depends upon the sufficiency of the record; but they should not be so hypercritically restricted as to destroy the very remedy which they are designed to afford" (pages 454, 455 of 201 N. Y., pages 1081, 1082 of 94 N. E.).

The petitioner in my opinion is entitled to maintain the proceedings, and a final order will therefore be made awarding to him the possession of the premises claimed. Ordered accordingly.