137 East 66th Street, Inc., Plaintiff, *v.* Louisa C. Lawrence, Andrew J. Dam and Henry A. Colgate, Defendants.

Supreme Court, New York Special Term, April, 1922.

Landlord and tenant — action for rent — New York city — pleading — holding over by old tenants for several months after new lease went into effect — joining old tenants and new lessee in action for rentals and for damages for breach of lease — when causes of action improperly joined — Civil Practice Act, §§ 117, 213.

A lease of an apartment in the city of New York having been made to L. and D. for a term ending September 30, 1920, the landlord on April 26, 1920, leased the same apartment to C. for a term of three years from October 1, 1920, at a yearly rental of $4,500. On June 11, 1920, L. and D. were notified of the new tenancies but continued in possession until June 30, 1921, when they abandoned the premises, and C., though he was given notice of the vacancy, refused to enter into possession of the apartment and paid no part of the rent reserved in his lease. *Held*, that in an action for rent the plaintiff was not entitled to recover more than the reasonable rent of the premises for the period covered by the " Housing Laws " and in no event against L. and D. in respect of any time subsequent to October 1, 1921.

A complaint against L., D. and C., in form warranted by section 211 of the Civil Practice Act, alleged as a first cause of action after setting forth the several leases, that no part of a fair and reasonable rent for the period commencing October 1, 1920, and ending September 30, 1921, or $4,500, had been paid by L. and D.; that plaintiff being in doubt as to the person or persons from whom he is entitled to redress, brings the action under section 213 of the Civil Practice Act with intent that the questions as to which of the defendants is liable and to what extent may be determined as between the parties and finally that there was due and owing from C. or from L. and D., as the court may decide, to plaintiff the sum of $4,500, with interest on monthly installments from October 1, 1920, to October 1, 1921. For a second cause of action the plaintiff realleged the facts above outlined and added that plaintiff endeavored to again lease the

said apartment with the purpose of reducing the losses and damages, but that the best rent he was able to obtain for the remaining few years of C.'s term was $4,200 a year, whereby he had been damaged in the sum of $600. The third cause of action was for brokerage commission paid on C.'s lease, and a fourth cause of action was for certain alleged injury to the premises caused by the occupancy by L. and D. *Held,* that regardless of the pleader's doubt, the first cause of action undertook to set forth a claim against L. and D., at least as statutory tenants for the reasonable rental during the time of their occupancy of the premises and also a cause of action against C. for the rent reserved in his lease, alleged to be reasonable.

The first, second and third causes of action pleaded alleged no cause of action in favor of plaintiff against D. and will, therefore, be dismissed as against him, but a cause of action was set forth against C.

The fourth cause of action being entirely unrelated to the cause of action against C., should not as matter either of law or of practice be united with it in the same complaint.

In view of the inartificial form of the complaint defendant D.'s motion, which is equivalent to an omnibus motion under section 117 of the Civil Practice Act, to strike from the first cause of action alleged all references to C. on the ground that they are irrelevant, unnecessary and impertinent and may tend to prejudice the fair trial of the action, and for judgment dismissing the second cause of action as not stating facts sufficient to constitute a cause of action, or to strike out all references to C.; for judgment dismissing the third cause of action as insufficient on its face and for the dismissal of the fourth cause of action or striking it from the complaint on the ground that it is for damages to real property, and improperly united with the preceding causes of action under section 258 of the Civil Practice Act and rule 102 of the Rules of Civil Practice; to strike out the name of C. as a defendant and for other and further relief, will be granted.

MOTION to strike out certain parts of the complaint and for dismissal of certain of the causes of action alleged.

*Hartwell Cabell,* for plaintiff.

*Baldwin, Runyon & Bromley (W. Cleveland Runyon,* of counsel), for defendant Andrew J. Dam.

*Francis S. Bangs,* for defendant Colgate.

BIJUR, J.    Plaintiff alleges that it, as landlord, in January, 1917, leased to defendants Lawrence and Dam an apartment for a term expiring September 30, 1920; that on April 26, 1920, it leased the same apartment to defendant Colgate for three years from October 1, 1920, at a yearly rental of $4,500, which is alleged to be a reasonable rent; that on June 11, 1920, defendants Lawrence and Dam were notified of the new tenancy, but nevertheless continued in occupancy until June 30, 1921, when they abandoned the premises; that Colgate, upon notice of the vacancy, refused to enter into possession or " to carry out any of the terms of his lease; " that no part of the rental reserved in his lease has been paid by him; " *Ninth.* That no part of a fair and reasonable rent for the period commencing October 1, 1920, and ending September 30, 1921, or $4,500, has been paid by defendants Lawrence and Dam. *Tenth.* That plaintiff is in doubt as to the person or persons

from whom he is entitled to redress, and he brings this action under section 213 of the Civil Practice Act, to the intent that the questions as to which of the defendants is liable and to what extent, may be determined as between the parties.     *Eleventh.* That there is now due and owing from the defendant Henry A. Colgate or from the defendants Louisa C. Lawrence and Andrew J. Dam, as this court shall decide, to the plaintiff the sum of $4,500, with interest (on the monthly installments) from October 1, 1920, to October 1, 1921.''

For a second cause of action apparently against all the defendants, plaintiff realleges the first ten paragraphs of the complaint as above outlined, and adds that plaintiff endeavored '' to again lease the said apartment with the purpose of reducing the losses and damages, but that the best rent that he was able to obtain for the remaining two years of Colgate's term was $4,200 a year, whereby he has been damaged in the sum of $600.

The third cause of action is for brokerage commission paid on the last-named lease, and a fourth cause of action is for certain alleged injury to the premises caused by the occupancy of Lawrence and Dam.

This motion is made by the defendant Dam for the following relief:

(1) To strike out from the first cause of action all references to Henry A. Colgate on the ground that they are irrelevant, unnecessary and impertinent, and may tend to prejudice the fair trial of this action.

(2) For judgment dismissing the second cause of action as not stating facts sufficient to constitute a cause of action, or to strike out all references to defendant Colgate.

(3) For judgment dismissing the third cause of action as insufficient on the face thereof.

(4) For judgment dismissing the fourth cause of action or striking it from the complaint on the ground that it is for damages to real property, and, therefore, improperly united with the preceding causes of action under section 258 of the Civil Practice Act and 102 of the Rules.

(5) To strike out the name of Colgate as a defendant, and

(6) For other and further relief.

Counsel for defendant Colgate has filed a brief consenting to the granting of the motion and asking informally that the complaint be dismissed as to him.

I shall omit detailed reference to the third and fourth causes of action as unimportant. It seems to me that regardless of the pleader's doubt the '' first cause of action '' undertakes to set forth a claim against Lawrence and Dam at least as '' statutory tenants '' (*440 West End Avenue, Inc.,* v. *Dempster,* 200 App. Div. 101) for the reasonable rental of the premises during the time of

their occupancy, *i. e.*, from October 1, 1920, to June 30, 1921, and a cause of action against Colgate for the $4,500 rent reserved in his lease for the period October 1, 1920, to October 1, 1921 (alleged to be a reasonable rental for that period). Under the form of the pleading, however, Lawrence and Dam are also sought to be held responsible for the rental of the whole year — presumably on the theory of an implied renewal. The second cause of action, similarly alleged against all three defendants, is presumably one for the difference between the rent reserved in the Colgate lease (or the reasonable rental) for the remaining two years, and the rent reserved in the lease to the new tenant obtained by the landlord.

It is clear that what defendant Dam seeks in the first instance is a formulation and trial of the issues against himself, unembarrassed by allegations and testimony claimed to be material only to an issue against Colgate. The complaint, however, is peculiar, and, as I shall show subsequently, on analysis presents a rather complex problem, which for its solution demands a review of the system adopted under the Civil Practice Act in relation to the joinder of parties and issues.

First, then, as to the right of plaintiff to maintain his action against defendants Lawrence and Dam and Colgate in one complaint. Plaintiff undertakes to support this right expressly upon section 213 of the Civil Practice Act, which reads: " Where the plaintiff is in doubt as to the person from whom he is entitled to redress he may join two or more defendants, to the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

To appreciate the significance of this section, however, it must be read in connection with other related provisions of the act, which together are intended to constitute a homogeneous scheme of practice. Since there are no reported precedents in this state, guidance may be sought in the experience of the English courts, from whose rules these provisions have been directly adopted. Section 209 of the Civil Practice Act provides for the joinder of plaintiffs. It is taken substantially *verbatim* from Order XVI, rule 1, of the English Rules of the Supreme Court, which reads (so far as material):

" 1. All persons may be joined in one action as plaintiffs, in whom any right to relief [in respect of or arising out of the same transaction or series of transactions] is alleged to exist, whether jointly, severally, or in the alternative, [where if such persons brought separate actions any common question of law or fact would arise; provided that, if upon the application of any defendant

it shall appear that such joinder may embarrass or delay the trial of the action, the Court or a Judge may order separate trials, or make such other order as may be expedient], and judgment may be given for such one or more of the plaintiffs as may be found to be entitled to relief, for such relief as he or they may be entitled to, without any amendment."

The words in brackets were added by an amendment of October 26, 1896.

This section is in itself immaterial in the instant case, because there is but one plaintiff, but it requires consideration because its terms have been construed in the English courts as having a direct bearing upon the right to join several defendants. Prior to the amendment of 1896 it was construed as authorizing a joinder of plaintiffs only where a single cause of action was involved. *Sadler* v. *Great Western Ry. Co.*, L. R. (1896) App. Cas. 450; *Smurthwaite* v. *Hannay*, L. R. (1894) App. Cas. 494.

Since the amendment, however, it has been interpreted as permitting such joinder where the relief sought relates to the same transaction or series of transactions and where a common question of law or fact would arise if the several plaintiffs brought suit upon separate causes of action. *Compania Sansinena de Carnes Congeladas* v. *Houlder Brothers & Co., Ltd.*, L. R. (1910) 2 K. B. 354, 362 *et seq.*

This brings us to the right to join several defendants. Section 211 of the Civil Practice Act reads: " All persons may be joined as defendants against whom the right to any relief is alleged to exist, whether jointly, severally or in the alternative; and judgment may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities."

The English interpretation of Order XVI, rule 4, which, so far as material, is in precisely the same language, is that this provision is governed by the import of rule 1 (our section 209), and that in substance, therefore, the defendants who may be joined are such only as would be affected by causes of action arising out of the same transaction or series of transactions, and requiring the consideration of a common question of law or fact. *Matter of Beck; Attia* v. *Seed*, 118 L. T. 629 (1918).

In passing it may be noted that to facilitate the joinder of defendants under our new practice the provision of section 484 of the Code of Civil Procedure, that the causes of action authorized to be joined in one complaint must " affect all the parties in the action " has been omitted from the corresponding section 258 of the Civil Practice Act, and section 212 has been added to confirm the change.

The entire subject of joinder is discussed in the two leading

and illuminating cases of *Thomas* v. *Moore*, L. R. (1918) 1 K. B. 555, and *Payne* v. *British Time Recorder Co.*, L. R. (1921) 2 K. B. 1.

In *Thomas* v. *Moore* eight members of a trade union sued six members of another union for slander, alleging both separate slanders and a conspiracy to slander. It was held in substance that these two causes of action were properly joined in one complaint, subject to the power of the judge to order separate trials if he should deem it embarrassing to try them all in one action. Pickford, L. J., in his opinion, which is repeatedly cited in subsequent cases, said: "Joinder of parties and joinder of causes of action are discretionary in this sense, that, if they are joined, there is no absolute right to have them struck out, but it is discretionary in the court to do so if it thinks right. * * * Therefore the point taken by the defendants that these causes of action cannot, as a matter of law, be joined in one action fails. It was, however, within the learned judge's discretion to say that they should not be tried together if he thought it wrong that they should. He was not asked in terms, * * * to say that they ought not to be tried together, but * * * the principles upon which the Court acts in such cases were sufficiently brought to the notice of the learned judge to enable him to exercise his discretion, if he had thought fit to do so, by refusing to allow the different causes of action to be tried together. He did not do so. The result is that the learned judge thought that the causes of action could without injury to anyone be tried together * * * and he had better opportunity of judging of that than a judge in chambers has, because he had heard the whole of the plaintiffs' case at the time when he was asked to rule as to the construction of the statement of claim."

Bankes, L. J., said: "At the trial, at the close of the plaintiffs' case, counsel for the defendants submitted that the statement of claim did not disclose any cause of action against the defendants individually, but only disclosed a joint cause of action for conspiracy. The learned judge ruled against that objection. It was then open to the learned counsel to ask that the various causes of action should be tried separately, because it was competent for the learned judge, even at that stage, to direct that the action for conspiracy should be tried first, and that the other separate causes of action against the defendants individually should be tried afterwards. No such application was made."

The conclusion reached was that no prejudice to defendants could be said to have resulted at the trial.

In *Payne* v. *British Time Recorder Co., supra*, Payne had contracted with the British Company to supply it with certain

cards conformable to sample. He contracted with the Curtis Company to supply him with these cards and directed them to be delivered to the British Company. The British Company refused to accept them as not conforming to sample. Plaintiff sued the British Company for the price of the goods, and in the alternative the Curtis Company in damages for breach of contract. Both defendants made separate applications to have their respective names stricken out as defendant, which was denied below, and the decision affirmed. Lord Sterndale, M. R., writing with the concurrence of the other members of the court, said that the question was whether the two defendants were properly joined under Order XVI, rule 4 (our section 211), and continues: " The action was brought against the two defendants on different contracts and the amount payable is not the same in each case. The plaintiff's claims are therefore inconsistent in this sense, that the plaintiff can in one event recover against the British Time Recorder Co., but not against W. W. Curtis. * * * Questions are raised between the plaintiff and one of the defendants which are not raised between him and the other defendants, but there is one very important question which is common to both defendants — namely, whether the cards were up to sample. If that is decided the rest of the case is mere fringe."

Referring then to some of the questions which are not common to both defendants, he wrote: " * * * the learned judge who tries the case will be able under Order XVI., r. 5, to avoid any injustice being occasioned to one of the defendants by reason of the fact that some of the questions do not concern them."

After quoting rule 5 (which is substantially section 212 of the Civil Practice Act), reading as follows: " 5. It shall not be necessary that every defendant shall be interested as to all the relief prayed for, or as to every cause of action included in any proceeding against him; but the court or a judge may make such order as may appear just to prevent any defendant from being embarrassed or put to expense by being required to attend any proceedings in which he may have no interest "— he continues: " I had some doubt at first whether the statement of claim in this case was not embarrassing, but I have come to the conclusion that on the whole it is not so embarrassing that the court ought to strike out one of the defendants. Even if the court were to strike out one of these defendants the only result would be that another action would be brought by the plaintiff against them, and the two actions would be tried by the same judge."

Scrutton, L. J., said: " The result of the later decisions is that you must look at the language of the rules and construe them

liberally, and that where there are common questions of law or fact involved in different causes of actions you should include all parties in one action, subject to the discretion of the Court, if such inclusion is embarrassing to strike out one or more of the parties. It is impossible to lay down any rule as to how the discretion of the court ought to be exercised.  Broadly speaking, where claims by or against different parties involve or may involve a common question of law or fact bearing sufficient importance in proportion to the rest of the action to render it desirable that the whole of the matters should be disposed of at the same time, the Court will allow the joinder of plaintiffs or defendants, subject to its discretion as to how the action should be tried.  *  *  *  If the two present defendants were not joined the result would be that there would be two actions which would be set down to be heard together. An application would then be made to the judge at the trial not to dispose of one of them until he had heard the other, and the judge would  endeavor to get in the evidence in both actions and exactly the same result would follow as if the joinder of the two defendants were allowed."

From these and similar decisions I gather that the English scheme of practice permits the joinder of plaintiffs and defendants on practically the same terms, namely, where the claims arise out of the same transaction or series of transactions, and there is a common question of law or fact, subject to the discretion of the court, either prior to the time of trial or during the trial to sever the actions or adopt such other remedial means as will prevent embarrassment or prejudice.

As to joinder of causes of action there is no precise English equivalent for Civil Practice Act, section 258 (formerly section 484 of the Code of Civil Procedure).  There are a few limitations upon joinder of causes of action to be found under Order XVIII, rules 2 and 3, but on the whole that subject also is left to the discretion of the court under rules 1, 8 and 9 of that Order.  Section 258 of the Civil Practice Act permits the joinder of two or more causes of action in twelve specified instances; the 9th subdivision authorizes joinder of " claims arising out of the same transaction, or transactions connected with the same subject of action."  This phraseology, it will be observed, corresponds in its general import with the statement of the basis upon which several plaintiffs or defendants may be joined both under the English rules and our Civil Practice Act.  The other subdivisions of section 258 constitute, from the English standpoint, a limitation upon the scope of a complaint. When originally enacted as Code of Civil Procedure, section 484, it was regarded in this state as a liberal measure in respect of the

practice as it then existed. See note to section 484 in Throop's Code, 1882, and generally the note at the head of chapter X, title 1, of " Trials " in that edition.

It may be that provisions corresponding to those of section 258 impliedly limiting joinder of causes of action to the cases enumerated were omitted from the English rules because the latter are directed principally toward insuring practical and practicable trial of issues, while the definition of a cause of action disconnected from parties plaintiff or defendant is an abstraction, of little if any value in determining the actual procedure to be followed.

Order XVIII, rule 1, provides: " Subject to the following Rules of this Order, the plaintiff may unite in the same action several causes of action; but if it appear to the Court or a Judge that any such causes of action cannot be conveniently tried or disposed of together, the Court or Judge may order separate trials of any of such causes of action to be had, or may make such other order as may be necessary or expedient for the separate disposal thereof." See, also, rules 8 and 9.

The board of statutory consolidation, in its report of 1912, recommended the adoption of the English precedent (see Appendix, specification b, p. 105), and in its draft of a bill and proposed rules embodied the counterpart of Order XVIII, rule 1, as rule 180, page 82 (see note 253, p. 300 of vol. 1), of the report of the board of 1915, but this recommendation was not followed. While it is probable that section 258 was retained as a provision against embarrassments which may arise from the joinder of unrelated causes of action in one complaint, the embarrassment is certainly not intrinsic or insuperable; otherwise the joinder would not be permitted in the cases covered by subdivision 9.

Outside, then, of the limitations of section 258, it seems to have been the intention of the framers of the Civil Practice Act to follow the English system in respect of joinder of parties and causes of action. The liberal doctrine adopted in England toward granting to the court discretion in directing separate trials of the whole or any part of several issues is manifestly an essential element of this policy. The English rules are highly flexible in that regard, the keynote being reliance upon the sound discretion of the trial judge as to whether the issues should be separately tried and the mode in which that is to be accomplished. While there is no precise equivalent in our Civil Practice Act for Order XVIII, rule 1, the same result is, I think, intended to be reached by the substantial adoption of Order XVI, rule 11, as our section 192, forbidding the defeat of an action because of misjoinder and awarding power to drop or add parties as necessity dictates, section

96, permitting an action to be severed whenever it can be done without prejudice to a substantial right, and sections 211 and 212, heretofore discussed, allowing judgment in cases of joint defendants to be directed according to the nature of the liability and permitting the court to make such directions as will prevent embarrassment or prejudice to defendants who may not be interested in a particular issue.

I am not unmindful of the fact that rule 105 of our " Rules of Civil Practice " requires a motion under rules 102, 103 or 104 (directed against misjoinder, irrelevant matter and the like) to be noticed within twenty days from the service of the pleading, although the time may be extended. I shall not undertake to prophesy what the ultimate determination may be as to the extent to which this limits the express provisions of the Civil Practice Act itself. Personally, I should be inclined to regard this rule as directory to the parties only, and as in no event mandatory upon the court itself. Laws of 1921, chap. 370. While the analogy is not perfect, some light on this subject may be gathered from the decision reached as to rule 31 of the former General Rules of Practice, which was he'd ineffective against the express provisions of the Code, specifying the mode of waiving the right to a jury trial under certain circumstances. See *Moot* v. *Moot*, 214 N. Y. 204, 210. The result arrived at in England, in the light of the decision of the *Payne Case*, *supra*, after an experience of almost a half-century in the new practice, is, I think, highly significant. In the first place, the change from the old artificial methods is shown to have been very gradual and achieved only after serious controversy and many decisions relating purely to practice. The standard English edition of 1922 of the Rules, by White, King and Springer, covers about 1,400 pages of text and annotations, 400 pages of titles of cases cited and 400 pages of index. In itself it furnishes convincing proof there is no royal road to simplified administration of justice, and that it is not possible to find mechanical substitutes for clear thinking. Indeed, even to-day that part of the High Courts of Justice in London devoted to the decision by the " masters " of questions of practice is familiarly known as the " Bear Garden." On the other hand, the growing liberal interpretation of the rules and the flexibility attributed to them by the recent decisions indicate that not only the practice itself, but the views of the courts in regard thereto, have been " simplified." I think the moral of the English lesson is that a mere change in text of the regulations governing practice can accomplish little unless the liberal spirit indicated thereby is adopted by the courts themselves. Concretely, as to the question of misjoinder, the

English conclusion appears to be that that subject has been relegated to its appropriate subordinate role of being a mere question of the mechanics of good pleading and intelligent trials as distinguished from matters of substantive law which affect the merits of a cause of action. If adequate provision is made for clear formulation of the issues so that the adverse party may know what he is to meet, and for a trial of the respective facts whether by court or jury, unembarrassed by confusing questions which do not affect the parties immediately concerned, a fair trial is assured. Under the English practice as interpreted he has ample and repeated opportunity to secure this result, and if that be achieved so far as the particular defendant expresses his desire to that end, the final judgment will not be disturbed.

We come then to section 213, *supra,* upon which plaintiff expressly places his reliance. This section is still generally supposed to countenance particularly the typical joinder in one complaint of causes of action against an agent and his disclosed principal who denies the agent's authority. See Bradbury's Practice Act, p. 145; note to this section in Parsons' Practice Manual, New York, 1921; English Annual Practice for 1922, first note to Order XVI, rule 7, the equivalent of § 213. The language of section 213, however, adds little or nothing to the broad provisions of section 211, and such is the conclusion to be derived from the English cases. When those which are cited in the note under Order XVI, rule 7 (Civil Practice Act, § 213), are read it will be found that they make practically no distinction between reliance on rule 7 (§ 213) and rule 4 (§ 211). See, for example, *Sanderson* v. *Blyth Theatre Co.,* L. R. (1903) 2 K. B. 533, 538, 541. Many of the cases do not even mention rule 7, and those which do treat it as practically equivalent to rule 4. Halsbury's Laws of England, under the titles " Pleading " and " Practice and Procedure " do not, so far as I can find, even mention rule 7. Cases in which these rules are discussed generally lay stress upon the consideration that whether doubt be expressly spoken of or not the relief sought is alternative and either wholly or partly exclusive as to one or the other defendant, as described in rule 4 (§ 211).

Since sections 211 (rule 4) and 212 (rule 5) permit defendants to be joined where relief is sought *in the alternative* and judgment to be entered in that way or distributively " according to their (defendants') respective liabilities," I can conceive of no case in which section 213 need be invoked.

What now does plaintiff seek in the complaint in the instant case? He asks for judgment against Lawrence and Dam upon a liability arising out of the lease to them which terminated October

1, 1920, and from their holding over after the termination of that lease, whether upon the principle of an implied renewal effective prior to the Housing Laws (*Schuyler* v. *Smith*, 51 N. Y. 309; *Kennedy* v. *City of New York*, 196 id. 19), or as " statutory tenants." *440 West End Avenue, Inc.*, v. *Dempster, supra.*

On the other hand, he alleges that he made a valid three-year lease to Colgate for a term beginning October 1, 1920. If that be so, then Colgate would be entitled to the rent from Lawrence and Dam after that date. *United M. Realty & Imp. Co.* v. *Roth*, 193 N. Y. 570. In other words, upon the allegations of the complaint Lawrence and Dam are liable at least for the reasonable rental of the premises from October 1, 1920, to June 30, 1921, *but not to the plaintiff.*

While it is true that under *Eells* v. *Morse*, 208 N. Y. 103, Colgate could not maintain summary proceedings against Lawrence and Dam even before the Housing Laws (1920), and of course could bring no proceeding since the enactment of those of September 27, 1920, for recovery of possession because of the inhibition therein contained, nevertheless his right to receive rent pursuant to *United M. Realty & Imp. Co.* v. *Roth, supra*, was an important and valuable consideration for which he might well have desired to continue his lease in effect. The situation presented is not one in which a contract is necessarily rendered void because subsequently declared illegal by statute (*Labaree Co.* v. *Crossman*, 100 App. Div. 499; affd., 184 N. Y. 586); but on the contrary is governed by the principle of *Baker* v. *Johnson*, 42 N. Y. 126, to the effect that where by subsequent governmental action the operation of a contract has been rendered merely more burdensome to one party, the effectiveness of the agreement is not thereby destroyed. Whether defendant Colgate, by reason of the intermediate passage of the Housing Laws of September 27, 1920, was entitled to rescind the lease, and whether he indicated his election to that effect, are not questions now presented for decision.

It seems clear also that plaintiff is not entitled to recover more than the reasonable rent of the premises for the period covered by the Housing Laws. I do not understand, either, how plaintiff can expect to recover in any event against Lawrence and Dam in respect of any term subsequent to October 1, 1921. It is clear that the draftsman of the complaint has sought to avail of the liberal provisions of section 211 (and 213) of the Civil Practice Act to assemble all varieties of claims against the several defendants without careful analysis or differentiation. Although in part the complaint seems to seek equivalent relief against both defendants

32

apparently in the alternative, the analysis above made indicates plainly that the judgment, if one be possible against any defendant other than Colgate, would have to be distributive, namely, in part against Lawrence and Dam and in part against Colgate.

Under a liberal interpretation of the provisions of the sections of the Civil Practice Act heretofore quoted I am inclined to believe that the form of the complaint is warranted by section 211 because in a broad sense and according to the English precedents the claims of the plaintiff have arisen out of the same transaction or series of transactions and do raise common questions of fact and law. In this aspect I am considering the causes of action as the pleader intends them to be understood, and not weighing their intrinsic sufficiency. Such has always been the practice in dealing with the objection of misjoinder. *Mahler* v. *Schmidt*, 43 Hun, 512; *Astoria Silk Works* v. *Plymouth Rubber Co.*, 126 App. Div. 18; *Day* v. *Bank of the State of N. Y.*, 9 Civ. Proc. Rep. 51. It is clear also that plaintiff's " doubt " does not arise from ignorance of the facts. Such doubt as is indicated is of the law to be applied to a known state of facts. In the present stage of the case there does not seem to be any issue on which the verdict of a jury may be sought except the question of the amount of a reasonable rent. There are, therefore, no issues of fact to be severed or separately tried, and it is unimportant whether defendants have been improperly joined or not. In view of the inartificial form of the complaint, to which I have referred, defendant Dam has, I think, properly resorted to what is equivalent to an omnibus motion (Civil Practice Act, § 117), with sufficient indication of the particular defects upon which he relies.

I do not believe that the objection of possible prejudice to or embarrassment of defendant Dam on the trial by virtue of the mere mention of the amount of rental reserved in the Colgate lease is justified. Even if it should come to the knowledge of the jury it can scarcely be regarded as threatening possible prejudice, because it is a matter of universal knowledge that the Hous'ng Laws were passed in order to limit rentals to a reasonable amount, and that tenants were actually willing to pay, and had pa'd, exorbitant rentals in view of the housing shortage.

The decision on this motion might well rest here were it not for the fact that all parties have undertaken to discuss the causes of action and their sufficiency on the merits, and it wou'd seem to be a waste of time and effort to refer that question to another part of this court.

My conclusion is that no cause of action under the " first, second and third causes of action " is alleged in favor of plaintiff as against defendant Dam, and that these should, therefore, be

dismissed as against him, but that a cause of action is set forth as aga'nst defendant Colgate. The fourth cause of action, for damage to premises done by defendants Lawrence and Dam, is apparently entirely unrelated to the cause of action against Colgate and should not, for this and other reasons, as matter either of law or pract'ce, be united in the same complaint. Settle order on notice.

Ordered accordingly.