James F. Niehoff, J.
This is a summary proceeding in which the landlord seeks (a) to evict the tenant for the alleged nonpayment of rent and (b) to recover a money judgment for rent allegedly due in the sum of $2,100.
The facts are not in dispute.
The tenant, Oliver James Murray, and his two brothers sold the subject premises, a one-family house, to 62 Spruce Street Realty Corp., and then entered into a one-year lease with the tenant which commenced on September 26, 1968 and was to expire on September 25, 1969. The tenant agreed to pay “ as and for .rental the general real estate taxes levied against the premises (the Town of Hempstead Tax; the School Tax; and the Village of Cedarhurst Tax) apportioned to the period of occupancy.”
During the term of the lease, that is, on or about July 28, 1969, 62 Spruce Street Realty Corp. transferred title to the premises to 62 Spruce Street Realty Co., a partnership — the landlord-petitioner herein.
On or about August 25, 1969 counsel for the landlord sent the tenant a letter reminding him that the lease would expire on *974 September 25, 1969. The letter concludes with these words: “ Our clients expect that you will remove from the premises on or before that date [i.e., September 25, 1969] and leave the same, including the grounds in a broom-clean condition.”
The tenant did not vacate the premises at the expiration of the lease, and the landlord did not institute a proceeding to evict the tenant. Instead, under date of October 3, 1969, counsel for the landlord sent the following letter to the tenant: “ Enclosed herewith is the 1969/70 School Tax Bill covering taxes on premises 62 Spruce Street, Cedarhurst.
“ In asmuch as you are still in possession of the premises, it is your obligation to pay this tax bill. When you vacate the premises which you hold under a monthly tenancy, an adjustment will be made for any prepaid taxes. ’ ’
Thereafter, as requested by the landlord, the tenant made payment of the first half of the 1969/70' school tax, which amounted to $303.51.
Section 232-c of the Beal Property Law provides that upon a holding over by a tenant whose term is for more than one month, the landlord may proceed in any manner permitted by law, to remove the tenant, or, if the landlord accepts rent for any period subsequent to the expiration of the term, then, unless an agreement, either express or implied, is made providing otherwise, there is created a tenancy from month to month, commencing on the first day after the expiration of the term.
In the case at bar, the landlord did not institute a summary proceeding to evict the tenant upon learning that the tenant intended to remain in possession beyond the term of the lease. Bather, the landlord asked the tenant to continue paying directly to the respective municipalities the real estate taxes on the premises just as the tenant had done under the lease — that being the sole rent reserved under the lease. The landlord can hardly deny that in so doing it intended to create a new tenancy (characterized by the landlord as a “monthly tenancy) ” with the monthly rental being the prorated taxes on the premises, for, as shown above, the landlord specifically wrote: “When you vacate the premises lohich you hold under a monthly tenancy, an adjustment will be made for any prepaid taxes.” (Emphasis supplied.)
In short, on October 3, 1969 the landlord by written communication to the tenant elected to permit the tenant to remain in possession under a .new term at the same monthly rental he had previously paid, to wit, the prorated real estate taxes on the premises. (See 34 N. Y. Jur., Landlord and Tenant, § 409.) It is true that section 232-c of the Beal Property Law declares *975 that in a holdover situation a tenancy from month to month is created ‘ ‘ if the landlord shall accept rent for any period subsequent to the expiration of such term ” and, in the instant case, the landlord did not receive any moneys from the tenant. But, the fact remains that pursuant to the landlord’s instructions, contained in the letter referring to the tenant as holding ‘ ‘ under a monthly tenancy ”, the tenant paid the first half of the 1969/70 school tax directly to the municipality, which was the same procedure he had followed in paying the rent during the term of the lease. In effect, then, the landlord accepted the payment of the taxes to the municipality as the rent and is estopped to deny that a statutory month-to-mon-th tenancy was created on October 3,1969, effective September 26, 1969.
One month later, i.e., on November 3, 1969 the landlord sent the tenant another letter in which it set forth ‘ ‘ the terms upon which they [the landlord] are willing to extend your lease in the above premises to March 31, 1970.” Among other things, the landlord decreed that “No interest will accrue on the mortgage which you and your family hold on the premises during your occupancy. ’ ’ The letter terminated with this paragraph: “If these terms are acceptable to you, will you please sign the copy of this letter which is enclosed herewith and return the same to us and thereupon your tenancy will be deemed extended to March 31,1970.”
The tenant did not respond to the letter of November 3, 1969. Consequently, on November 19, 1969 counsel for the landlord again wrote to the tenant informing him ‘‘ that unless some suitable arrangements are made immediately for you to continue in the premises, our clients [the landlord] have instructed us to take such steps as are necessary in order to effectuate your removal.”
Once again, the tenant ignored the letter of landlord’s counsel. Accordingly, on December 4, 1969 (i.e., more than two months after the expiration of the lease) a final letter was sent to the tenant. This letter stated that ‘ ‘ since no satisfactory arrangements have been made for the continuance of your tenancy in the above premises, you are hereby notified that your rent for the occupation of the said premises commencing with September 25, 1969, the date of the expiration of your lease, is hereby fixed at $300.00 per month. ’ ’ The letter went on to state that the tenant would be credited for amounts prepaid for taxes and that there was then due and owing ‘‘ the sum of $1200.00 for rent for the period September 26, 1969 to December 25, 1969
*976 The letter ended with the following language: “ In the event the rent demanded herein is not paid by December 15, 1969, we .shall take such steps as we deem necessary in order to remove you from the premises.”
The sum demanded was not paid by the tenant and by notice of petition and petition dated April 9, 1970 the landlord brought on this summary proceeding (a) to evict the tenant for nonpayment of rent, at the monthly sum of $300, for a period of seven months commencing September 26, 1969 and ending March 26, 1970, a total of $2,100 and (b) to recover a money judgment in said amount.
The landlord is not entitled to the relief sought.
Among the grounds for summary proceedings are (1) expiration of term, and (2) nonpayment of rent (see 14 Carmody-Wait 2d, Summary Proceedings, §§ 90:11, 90:55). The landlord has not established its right to evict the tenant upon either of those grounds.
The tenancy created after the tenant held over being, as a matter of statute, a tenancy from month to month, it follows that the landlord cannot bring an end to the tenancy and regain possession of the premises upon the ground of “ expiration of term ’ ’ without giving the tenant the one-month notice of termination required by section 232-b of the Real Property Law in the case of monthly tenancies or tenancies from month to month (see Aronson v. Markulin, 39 Misc 2d 273; Pecoraro v. Ryan, 39 Misc 2d 949; 34 N. Y. Jur., Landlord and Tenant, § 412; 14 Carmody-Wait 2d, Summary Proceedings, § 90:31). No such notice has been given to the tenant. Hence, the tenant has the right to remain in the premises as a month-to-month tenant, the rent being the prorated taxes on the premises. The court notes that no claim is made in the petition that such rent has not been paid.
The landlord’s claim to relief herein appears to be based upon its belief that subsequent to October 3, 1969 it possessed the right (a) to effectuate a unilateral increase in the tenant’s rent — even retroactively — and (b) to evict the tenant when he failed or refused to pay the unilaterally increased rent. This belief is without foundation in law.
True it is that a number of cases hold that where a landlord gives the tenant notice of increased rent prior to the expiration of the lease term and before the holdover tenancy begins, the month-to-month tenancy thereafter resulting is upon the increased rental basis, inasmuch as the law will, in that factual situation, imply an agreement by the tenant to accept the new *977 rental when he remains in possession (see, e.g., Rita Knitting Mills v. Seidler, 40 Misc 2d 725; South Carolina Leasing Co. v. Allen, 32 Misc 2d 659 [App. Term, 2d Dept.]; Fordham Hill Assoc. v. Fiebach, 21 Misc 2d 277). However, recently, in the case of Matter of Jaroslow v. Lehigh Val. R. R. Co. (23 N Y 2d 991) the Court of Appeals appears to have rejected the principle announced in the foregoing decisions. In the Jaroslow case the landlord gave the tenant notice of increased rent prior to the expiration of the lease term and before the tenant held over. The landlord then sought to evict the tenant for nonpayment of the increased rent. Although the Court of Appeals made no reference to the aforesaid cases, in affirming the dismissal of the summary proceeding, the court wrote (p. 993): ‘ ‘ An action for nonpayment of rent, based on a notice purporting to fix a rent, never agreed upon by tenant and never paid by tenant, does not lie, there being no tenancy in fact or at law obligating the tenant for such rent.” (See, also, Matter of Reimer v. Kaslov, 61 Misc 2d 960.)
In any event, in the instant case the landlord did not send the tenant a notice of increased rent prior to the expiration of the lease term. Instead, the landlord by its own action created a statutory month-to-month tenancy at the same monthly rental provided in the lease. Before that rent could be increased it was necessary for the landlord to legally terminate the month-to-month tenancy. As the court stated in Pecoraro v. Ryan (39 Misc 2d 949, 950, supra): “ The landlords agreed to rent the property to the tenant at a given rental and the tenant agreed thereto. The agreement by virtue of statute is for an indefinite period which may, however, be terminated by either party. If the landlord desires to terminate, he is required to serve a 30-day notice upon the tenant which definitely and unequivocally terminates same. He may not unilaterally modify the terms of the agreement while it is still in effect, but this is in effect what the landlords have sought to do. The provision in the notice that if the tenant remains in occupancy after the date fixed therein for payment of the increased rent means nothing and is ineffective to impose upon the tenant the obligation to pay the increased rent. ’ ’ (See, also, Acierno v. Kutchuck, 196 Misc. 514.)
Inasmuch as the landlord failed to terminate the original month-to-mon.th tenancy, the landlord is not entitled to possession of the premises or a money judgment (see 14 Carmody-Wait 2d, Summary Proceedings, § 90 : 276).
Accordingly, the petition is dismissed, with costs.