Carmelo A Parlato, J.
Respondents herein have applied for an order vacating the final order of eviction entered herein on May 19, 1976, on their default in appearance. From the papers submitted on such application, and the testimony taken before the undersigned, I have granted such application, in the exercise of discretion, based on the following findings: I firstly find the respondents’ default excusable. In particular, I find that neither of them had actual knowledge of the petition and notice herein or, otherwise, of the fact that these proceedings had been brought; that service of said petition and notice by the City Court marshal (namely Samuel Fusco, whose testimony was also taken) while in compliance with statutory requirements, simply did not succeed in giving respondents actual notice. I also believe, especially from respondents’ having appeared and having successfully defended a prior similar proceeding, they would have appeared on May 19, 1976, if they had been aware of the proceedings scheduled for that date. Respondents’ failure to receive the Post Office’s notice of the registered item (petition and notice), while negligent on their part, was not deliberate. Upon receiving notification that a warrant of eviction had been issued, respondent promptly initiated this application, i.e., by order to show cause issued on May 25, 1976.
I also find, from the papers herein as well as the stipulations and statements made before the undersigned, that respondents have a meritorious defense to the petition herein, so much so that I have dismissed said petition. In this respect, however, it should be noted thpt in the course of entertaining respondents’ application to open their default, I did (conditioned upon such application being granted) permit petitioner to amend its petition so as to annex thereto both the "Rental Agreement” and the notice of rental increase, as well as to add allegations to the effect that such notice had been served before March 1, 1976; and also the respondents’ response to such notice; all being later more particularly described.
The undisputed facts appear as follows: that early in the month of January (but prior to the 15th day), 1976, the parties entered into a "Rental Agreement”, of indefinite duration, providing for a monthly rental of $169, payable on the 1st day of each month, and the respondents entered into possession of the subject premises thereunder, on or about January 15. The *445 attorneys and this court are in accord that the tenancy thereby created was month-to-month. Prior to March 1, 1976, petitioner caused to be sent, and respondents received, a letter stating "please be advised that effective April 1, 1976, your rent will be increased to $300.00 per month, and every month thereafter.” Respondents, by letter mailed March 4, 1976, and received by petitioner on March 5, 1976, stated they "will continue to tender the amount of $169.00 monthly * * * the amount stated by you initially”. In April, petitioner brought a summary proceeding for eviction, based on respondents’ alleged failure to pay $300 rent for April; such proceeding was dismissed on the ground that "rental [had been] accepted”; in fact, rental of $169 had been paid and received prior to the commencement of said April proceeding. For May rental, respondents sent to petitioner a money order for $169, which petitioner has received, but has notified respondents it is being held "only for such time as allows you the opportunity to forward an additional amount of $131.00 as the additional amount requested, or for you to contact me, immediately, that you are vacating the premises at which time I shall return the $169.00 to you.” Nothing further has been paid, nor has anything been returned. The instant proceedings were thereupon commenced originally seeking a rental of $431, being $300 claimed due for May, and $131 for April balance; the petitioner later stipulating to withdraw the said $131 demand, for the purposes of this proceeding.
There is no basis in the pleadings or other papers or in the statements of counsel, for any possible finding that respondents ever assented in fact to a rental of more than $169; nor is there any basis to find other than that respondents promptly communicated to petitioner their rejection of any proposed rental increase.
Petitioner in effect has further moved to amend the petition so as to allege that respondents exercised a "greater dominion” over the premises than had been provided for in the rental agreement, and that for the use in fact enjoyed by respondents $300 per month is in fact reasonable. I have denied such implicit request for amendment, and also the offer made to prove such facts under the original pleading, for the reason only that such allegations are irrelevant in this, a summary proceeding based on nonpayment of rent.
"Rent” (or "rental”) is of course a contract term, and for any finding that "rent” existed there must have been, if not *446 an express agreement, then agreement implied by some acceptable legal principle. In this respect there are some cases (e.g. Pecoraro v Ryan, 39 Misc 2d 949), by which it would be deemed that the original rent provided for in the "Rental Agreement”, i.e. $169, continued beyond April 1, 1976, simply because the original month-to-month tenancy was never terminated, there having never been an explicit notice of termination as required by section 232-b of the Real Property Law. I would not dismiss the petition herein on such basis. There is no prescribed form for such section 232-b notice; it need only be clear, definite and unequivocal (Rasch, NY Landlord and Tenant [2d ed], § 1050) and the question is then whether a notice (as here) simply "increasing the rent” satisfies such tests and can be construed as a notice of election to terminate.
A message can be "clear, unequivocal and definite” notwithstanding that it not be explicitly stated, if it is communicated by necessary implication. Rent being a vital element of a tenancy, a change in rent is clearly antithetical to a continuation of that same tenancy, and a notice that the rent shall be changed is thus the equivalent of a notice terminating the tenancy; and if the notice of rental increase is clear, unequivocal and definite, it satisfies the aforesaid rule, and constitutes a notice terminating the tenancy.
The next question is whether such a notice of rental increase accomplishes any more than to terminate the tenancy and, if so, just what it accomplishes. I am further of the view that such notice constitutes also an offer to the tenant that there be a new tenancy, starting where the old one is scheduled to leave off, with the specified rental increase.
Petitioner’s success herein rests squarely on the validity of the proposition that a tenant remaining in possession after expiration of his term, and having been notified by his landlord upon what terms and conditions (including rent) he may elect to remain, is bound by those new terms, irrespective of any repudiation by him (the tenant) thereof.
Consideration of this proposition entails recognizing the difference between it and a somewhat related common-law rule that where a tenant for a definite term remained in possession beyond that term, his landlord had the option of either (a) evicting the tenant, and suing for the reasonable value of the use and occupancy or (b) treating the tenant as a tenant for a new term in which case (absent any express agreement) the terms and conditions of the old tenancy (such *447 as rent) remained the same. The relative reasonableness of this common-law rule was from the fact that the tenant— insofar as all of his rights and obligations are concerned — was bound to no more and no less than what he had originally agreed upon. This common-law rule thus was limited to imposing upon a tenant an implied agreement as to extended duration of something he had theretofore truly agreed upon. This was the common-law rule of holdover tenancy (see Rasch, NY Landlord and Tenant [2d ed], §§ 273, 274.)
The aforesaid proposition (upon which petitioner must rely) would go much further than the aforesaid common-law rule of holdover tenancy. It would hold a tenant bound to obligations far exceeding what he had previously agreed to. It would treat a tenant holding over as worse than a rank trespasser: by in effect permitting the landlord to increase the "rent” without limitation as to reasonableness, it would give him unlimited right to set his own damages for trespass. It takes little imagination to see — especially since the "new rent” so establishable could be used equally as a basis for a money judgment —that such a rental increase could easily be used to deter the personal appearance of a tenant to defend an eviction that was, ploys aside, being sought simply to remove him from the premises.
It is the view of this court that before such proposition is considered controlling law it must be found to be based on clear decisional authority, which I am pleased to find lacking.
Even before Jaroslow v Lehigh Val. R.R. Co. (23 NY2d 991), I find that decisional law was not clearly authoritative on the point. The case cited usually as foundation authority for such proposition is Despard v Walbridge (15 NY 374, 376), decided in 1857. In that case there had been a finding of fact below of a new rental agreement; there had been apparently no evidence that the tenant had expressly disavowed the new terms offered by the landlord. The tenant had demurred. The true import of this case was, I believe, thus simply that, in the absence of disavowal by the tenant, the terms offered by the landlord, in combination with the holding over, are sufficient as a matter of law to sustain a finding of fact that there was an acceptance by the tenant of those new terms. (See, also, United Merchants’ Realty & Improvement Co. v Roth 193 NY 570, 581.)
In Jaroslow v Lehigh Val. (supra) the Court of Appeals not only interpreted section 232-c of the Real Property Law but *448 also by clear implication repudiated the said proposition. The facts before the court were that the landlord had notified the tenant that if the tenant remained in possession of the subject premises on or after (April 1, 1976 substituting the date and amounts, they being analogous) the rent would be increased from ($169) to ($300) per month.
On these facts the said proposition would have, even with section 232-c applying, required that the landlord be granted his relief, i.e., eviction for nonpayment of the "new rent”. In denying landlord such relief, I believe the Court of Appeals clearly rejected said proposition. In other words, consideration of said section 232-c would have required only the defeat of a claim that the duration of the holdover tenancy be for more than month-to-month, not of the claim (which was rejected by the court) that for at least the first month beyond the expired lease the amount designated by the landlord be considered "rent”. I therefore hold that the words of the Court of Appeals in said Jaroslow v Lehigh Val. (supra, p 993), equally apply in the case of a tenant (as respondents here) holding over upon the expiration of a month-to-month tenancy: "An action for nonpayment of rent, based on a notice purporting to fix a rent, never agreed on by tenant and never paid by tenant, does not lie, there being no tenancy in fact or at law obligating the tenant for such rent.”
It is thus my view — which I state with a hope that there may be a more consistent procedure, and hereafter referring to month-to-month tenancies alone — that summary proceeding based on nonpayment of rent should lie if and only if the petition alleges that the tenant agreed to pay the speciñc rent upon which the proceeding is grounded, proof being either that there was express agreement, or an agreement implied by a previous payment of that same specific amount.
Where a landlord wishes simply to evict a tenant, he should proceed simply to terminate the tenancy per section 232-b of the Real Property Law and, if necessary, maintain a summary proceeding for eviction based on the holding over.
Where a landlord wishes a higher rent, he may negotiate for same, in good faith. If, after negotiation, he despairs, then he must decide either to continue with the rent unchanged or to terminate the tenancy. If the landlord wishes he may send notice of termination, as per section 232-b of the Real Property Law, along with or in advance of negotiation for a different rent (or different other provisions of the tenancy), in *449 which case, should negotiations fail to produce a true meeting of the minds, then the termination will take effect as per the notice, and the landlord’s remedy will be eviction for the holding over.
As to the usual "notice of rental increase”, I repeat that I consider such to satisfy (as to form) the requirements of section 232-b of the Real Property Law, so as to constitute a notice of election to terminate and that I also consider such notice of rental increase to constitute an offer to make a new tenancy agreement, to follow the old, on different terms. I might add, in view of such current decisions as Pecoraro v Ryan (39 Misc 2d 949, supra), with which I disagree, that a preferable procedure (where the landlord wishes to create a choice for the tenant) would be to state what I consider to be the two constituent parts, explicitly and separately, i.e., one notice explicitly terminating the tenancy; and another notice stating an offer (specifying that it is not to be construed as an abrogation of the first notice; also possibly setting a deadline date for acceptance, otherwise it would be withdrawable at will) for a new tenancy, should the tenant accept, to commence upon termination of the old. I repeat also that on failure of the tenant to agree to the new rent, or to make some other agreement with the landlord, the landlord’s remedy will be to evict on the ground of the tenant’s holding over after the scheduled termination, not on the ground of nonpayment of rent. It might be added that where a landlord accepts any amount of rent applicable to a time following termination of the tenancy, he in effect reinstates the tenancy, unless, he has already instituted summary proceedings based on the holding over. (See Real Property Actions and Proceedings Law, § 711, subd 1.)
Petition herein is accordingly dismissed.