■ In the Matter of JOYOUS HOLDINGS, INC., Respondent-Appellant, v VOLKSWAGEN OF ONEONTA, INC., Appellant-Respondent.—Weiss, J. Cross appeals from an order of the County Court of Delaware County (Estes, J.), entered July 10, 1986, which modified a judgment of the Justice Court of the Town of Davenport in favor of petitioner.

On July 17, 1973, petitioner, formerly named Eckert Holding, Inc., leased commercial property on Route 23 in the Town of Davenport, Delaware County, to respondent for 10 years, from August 1, 1973 until July 31, 1983. The lease contained an option to renew for an additional five years at the same rent as was payable during the last year of the lease, i.e., $2,000 a month, provided written notice of the exercise of the option was given one year prior to the expiration of the initial term. The lease also contained an option to purchase the property, a covenant of quiet enjoyment, and a covenant obligating the tenant to make all repairs. By letter dated July 28, 1982 written by its attorney, respondent notified petitioner that it exercised the renewal option "contingent upon numerous structural repairs being made by you as well as other conditions necessary to make the premises habitable". Petitioner neither responded nor made repairs and continued to accept $2,000 a month from August 1, 1983 through November 1984, after expiration of the original term, although it had given notice that the rent would be increased to $3,300 a month commencing September 1, 1984. On October 29, 1984, petitioner served a 30-day notice terminating the month-to-month tenancy and returned respondent's $2,000 check for the December rent. Thereafter, respondent remained in possession until June 1985.

Meanwhile, in the fall of 1984, the parties negotiated toward a possible sale of the premises to respondent, but a sale was never consummated.[1] On February 20, 1985, petitioner commenced the instant proceeding to recover possession, which culminated in a judgment in its favor after a trial in the Justice Court of the Town of Davenport, together with past due rent, in the sum of $26,000, less $6,000 paid on account and an adjustment for prepaid taxes. On appeal, County Court modified the judgment by deleting the award of $3,900 for the balance of the rents for September, October and November 1984, and by reducing the rent from $3,300 a month for the period December 1, 1984 through May 31, 1985 to $3,000 a month. In so finding, County Court held that the options to renew the lease and to purchase the property had not been effectively exercised, and that a month-to-month tenancy resulted after the expiration of the initial term.

1. Paragraph 9 of the lease gave an option to respondent to purchase the property exercisable on August 1, 1980 or on any anniversary date during the lease, to be exercised by written notice 30 days prior to the effective date. A method for determining the price through appraisers appointed by each party was provided.

Respondent appeals from the order and petitioner cross-appeals from the deletion and reduction of rents.

Respondent initially maintains that it effectively exercised the option to extend the lease for the additional five-year term by virtue of the July 28, 1982 letter referred to above. We disagree. It is settled law that a tenant's election to renew a lease must be timely, definite, unequivocal and strictly in compliance with the terms of the lease (see, Orr v Doubleday, Page & Co., 223 NY 334, 339; Schoen v Scudder, 51 AD2d 666; 34 NY Jur, Landlord & Tenant, § 419, at 273-275). Here, the purported election was expressly contingent upon the performance of structural repairs and thus properly deemed ineffective. Nor are we persuaded by principles of equity that a forfeiture of the rental term is inappropriate. Unlike J. N. A. Realty Corp. v Cross Bay Chelsea (42 NY2d 392), relied on by respondent, this is not an instance where the tenant's failure to effectively renew was due to mere inadvertence and valuable improvements had been made to the leasehold. To the contrary, it is evident that respondent deliberately conditioned its renewal upon the completion of structural repairs. There is testimony that respondent's president, Herbert Kaluza, repeatedly complained about the roof and, at one point, even denied being bound by the July 28 letter purporting to exercise the option. Kaluza indicated that if an agreement concerning the roof repairs could not be reached, he would look for another location. He also told his attorney to negotiate a new lease. It is apparent that respondent purposefully couched the July 28 letter in conditional terms in order to gain a bargaining advantage in negotiating a new lease. By its own terms, the letter concludes with reference to "a new lease and/or the option to purchase". Further, there is no indication that respondent made valuable improvements to the leasehold. Under these circumstances, equitable relief analogous to that in J. N. A. Realty is not warranted.

Respondent further maintains, on the basis of equitable estoppel and/or waiver, that since petitioner failed to formally reject the July 28, 1982 election letter and never advised respondent until July 1984 that a month-to-month tenancy came into existence upon the expiration of the original lease (see, Real Property Law § 232-c), an implied agreement to extend the lease was reached. Again, we disagree. Although the better course would have been for petitioner to have directly rejected the July 28 letter, as indicated, respondent

was actively attempting to secure the roof repairs[2] and had expressly taken the position that the July 28 letter was not binding on it. Since it is evident that respondent was attempting to secure a new lease, we perceive no basis to imply an agreement to extend the existing lease.

We agree with County Court that a month-to-month tenancy pursuant to Real Property Law § 232-c resulted at the expiration of the original lease upon petitioner's continued acceptance of rent (see, Jaroslow v Lehigh Val. R. R. Co., 23 NY2d 991, 992-993). Respondent's reliance on 28 Mott St. Co. v Summit Import Corp. (34 AD2d 144, affd 28 NY2d 508) is misplaced for, as indicated above, there is no compelling evidence of an implied agreement to extend the lease.

Respondent's assertion that it exercised its option to purchase the leasehold is similarly unpersuasive. Pursuant to the terms of the lease, this option was available as of August 1, 1980 and annually thereafter. The letter from respondent's attorney dated October 17, 1978, purporting to exercise this option, was plainly premature[3] and, in any event, no negotiations were undertaken at that time. In the July 28, 1982 letter purporting to exercise the renewal option, respondent further stated that it reserved the right to exercise the option to purchase, effectively indicating that the purchase option had yet to be exercised. While the parties engaged in purchase negotiations in the fall of 1984, and each obtained an appraisal, a sale was never consummated because the parties' respective appraisers could not agree on an independent third appraiser in accord with terms of the lease purchase option. In sum, County Court correctly determined that respondent failed to exercise either the purchase option or the option to renew.[4]

Finally, County Court properly deleted the award of $3,900

---

2. Although respondent maintains that petitioner breached the covenant of quiet enjoyment in refusing to repair the roof, no proof was advanced that respondent was compelled to abandon possession (see, Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77, 83; Sears, Roebuck & Co. v 9 Ave.—31 St. Corp., 274 NY 388, 398). Moreover, pursuant to the terms of the lease, respondent covenanted to make repairs.

3. The letter stated that respondent was "interested in purchasing the building * * * if [petitioner] would care to sit down and negotiate a purchase price".

4. Having reached this conclusion on the merits, we need not determine whether respondent's purported exercise of each option was ineffective under General Obligations Law § 5-703 (1) for failure to establish that its attorney had written authorization to exercise the options on respondent's behalf (see, Ochoa v Estate of Sarria, 97 AD2d 538).

for the rental balance from September 1984 to November 1984. As indicated, upon expiration of the lease, a month-to-month tenancy was created (Real Property Law § 232-c). Even assuming that petitioner could unilaterally increase the rent from $2,000 to $3,300 a month effective September 1, 1984, its acceptance of the lesser sum for the ensuing three months precludes recovery of the balance (see, *Farrell Lines v City of New York,* 63 Misc 2d 542, 544, *affd* 35 AD2d 788, *affd* 30 NY2d 76; *see also, Matter of Industrial Funding Corp. v Megna,* 87 Misc 2d 443; *62 Spruce St. Realty Co. v Murray,* 62 Misc 2d 973). Further, upon termination of the month-to-month tenancy effective December 1, 1984, County Court had ample basis to assess the fair rental value for the holdover period at $3,000 a month.

Order affirmed, without costs. Mahoney, P. J., Kane, Main, Weiss and Levine, JJ., concur.