OPINION OF THE COURT
Memorandum.
Ordered that the judgment entered June 7, 2010 is reversed, without costs, and landlord’s motion to modify the final judgment dated November 4, 2009 is denied.
*60 Landlord commenced this nonpayment proceeding by notice of petition and petition dated October 12, 2009, alleging that tenants owed monthly rent of $13,000 for September and October 2009 pursuant to a written agreement. It was also alleged, but never proven, that rent had been demanded in writing. On the November 4, 2009 return daté of the petition, the Justice Court signed a final judgment awarding landlord, among other things, possession and arrears of $26,000, representing rent for September and October 2009. It appears that landlord had orally moved, on the November 4, 2009 court date, to include November rent in the judgment, and the court had given tenants time to respond to landlord’s claim for the November rent. Tenants subsequently moved to dismiss the petition, noting that the lease permitted landlord to apply their $30,000 security deposit to the September and October rent and that, since they had surrendered possession on October 31, 2009 and had given landlord timely notice in accordance with an alleged early termination provision of the lease extension agreement, they did not owe the November 2009 rent.
By decision datéd December 15, 2009, the court “granted” tenants’ motion to dismiss to the extent of amending the November 4, 2009 final judgment to provide that tenants had agreed to release $26,000 of the security deposit to landlord to satisfy the September and October arrears.
In papers submitted in opposition to tenants’ motion to dismiss, and in papers subsequently submitted in further support of landlord’s prior oral application to include November 2009 rent in the judgment, landlord claimed that he was entitled to the November 2009 rent because tenants had not surrendered possession until November 3, 2009 and because the claimed early termination provision in tenants’ lease extension was either invalid, because it was not agreed to by landlord, or not complied with, because less than 90 days’ notice had been given. The Justice Court set the matter down for a hearing, following which it found that tenants had substantially vacated the premises by November 1, 2009 and were not liable for November 2009 rent on the basis of a holding over. The court further found that landlord had mailed (the testimony was that landlord had hand-delivered) a lease extension agreement to tenants for the period terminating February 28, 2010; that tenants had not executed and returned the agreement until July 28, 2009; that the agreement, when returned by tenants,' contained handwritten additions allowing tenants to terminate the lease upon “60-90 *61 days” notice; and that landlord had not initialed or approved tenants’ additions to the extension agreement. Based on these findings, the Justice Court awarded landlord a judgment for additional arrears of $52,000, representing $13,000 per month for November and December 2009, and January and February 2010, plus attorney’s fees, costs and disbursements. (We note that there is no provision in the lease or proposed lease extension agreement allowing landlord to recover attorney’s fees for prevailing in a nonpayment proceeding.) Tenants appeal from this judgment, and we now reverse it and deny landlord’s motion to modify the earlier final judgment.
By making material modifications to landlord’s proposed lease extension agreement, tenants, in effect, rejected the proposed agreement and made a counteroffer (see ADCO Elec. Corp. v HRH Constr., LLC, 63 AD3d 653 [2009]). As landlord testified that he did not accept the terms of tenants’ counteroffer and did not initial or approve the changes, and since neither party intended the agreement to be binding until it was fully agreed to and executed, the lease extension agreement never became binding (id.).
Contrary to landlord’s claim on appeal, the tenancy created by operation of law after tenants held over without a lease extension in place and landlord accepted rent from them was a month-to-month tenancy, not a year-to-year tenancy (Real Property Law § 232-c; see Logan v Johnson, 34 AD3d 758 [2006]; Elite Gold, Inc. v TT Jewelry Outlet Corp., 31 AD3d 338 [2006]; Matter of Joyous Holdings v Volkswagen of Oneonta, 128 AD2d 1002 [1987]). An implied agreement for a year-to-year tenancy cannot be found here since the proof establishes that the parties contemplated a written one-year lease extension but were unable to agree upon its terms, and rent was paid on a monthly basis.
Landlord’s further contention that, if a month-to-month tenancy was created, it was at a rental rate of $16,500, which landlord claims was the rate paid under the expired lease, is similarly without merit. When tenants delayed in executing the lease extension, landlord’s options were to commence an eviction proceeding or to accept the rent tenants tendered. As landlord elected to accept the $13,000 per month rent tendered by tenants, and did so for the six months from March 2009 through August 2009, “the acts and conduct of the parties negate the existence of the original contract” (Transit Drive-In Theatre v Outdoor Theatre Caterers, 53 AD2d 1009 [1976]), and *62 landlord cannot now be heard to claim that there was no implied agreement for a rent of $13,000 per month. This is especially true here, where landlord apparently demanded, and sued for, $13,000 per month for September and October 2009 rent.
We note that, contrary to tenants’ claims, their surrender of possession after the commencement of the proceeding did not divest the court of jurisdiction (Sowalsky v MacDonald Stamp Co., 31 AD2d 582 [1968]; Lido Realty, LLC v Thompson, 19 Misc 3d 144[A], 2008 NY Slip Op 51105[U] [App Term, 2d & 11th Jud Dists 2008]).
Accordingly, the judgment entered June 7, 2010 is reversed and landlord’s motion to modify the prior final judgment is denied.
Molía, J.E, LaCava and Iannacci, JJ, concur.